Case 3:24-cv-00313   Document 57   Filed on 07/07/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, §§§§§ Plaintiff. §§§§§ v. §§§§§ GREGORY L. LEWIS, *et al.*, §§§§§ Defendants. | CIVIL ACTION NO. 3:24-cv-00313 |

## MEMORANDUM AND RECOMMENDATION

Pending before me are two motions: (1) Claim-Pro's Motion for Leave to File First Amended Pleading (Dkt. 53); and (2) Plaintiff's Rule 12(b)(6) Motion to Dismiss Claim-Pro's Counterclaim and Brief in Support (Dkt. 20). Having reviewed the briefing and applicable law, I recommend the motion for leave be denied and the motion to dismiss be granted in part and denied in part.

## BACKGROUND

Reva Garrison Lewis ("Decedent") died on July 13, 2023, from multiple gunshot wounds. At the time of her death, Decedent was a participant in the Maximus Employees Welfare Benefit Plan (the "Plan"). Under the Plan, Decedent had $41,000 in basic life insurance coverage, $120,000 in supplemental life insurance coverage, and $41,000 in additional accidental death benefits.

The most recent beneficiary designation form identifies Decedent's spouse, Gregory Lewis ("Lewis"), as the beneficiary of 50 percent of the Plan benefits, and Decedent's two minor children as the beneficiaries of the remaining 50 percent. After Decedent's death, Lewis submitted claims on behalf of himself and the two minor children to Metropolitan Life Insurance Company ("MetLife"), the Plan's claim administrator.

On July 26, 2023, MetLife received an Irrevocable Assignment (the "Assignment"). In the Assignment, Lewis assigned $22,511.25 of his share of the

Plan Benefits to Robinson Family Funeral Home for Decedent's funeral expenses. Robinson Family Funeral Home then assigned the $22,511.25 to Claim-Pro, LLC.

MetLife filed this interpleader action in October 2024, requesting that this court adjudicate who is the proper beneficiary (or beneficiaries) of the 50 percent of the basic and supplemental life insurance benefits designated to go to Lewis. According to the Complaint in Interpleader, the accidental death benefit claim is still pending. A few days after this case was filed, I appointed a guardian ad litem to represent the interests of the two minor children. *See* Dkt. 8.

Texas law provides that a "beneficiary of a life insurance policy or contract forfeits the beneficiary's interest in the policy or contract if the beneficiary is a principal or an accomplice in willfully bringing about the death of the insured." Tex. Ins. Code. § 1103.151. In the Complaint in Interpleader, MetLife notes that although a woman has been arrested and charged with Decedent's murder, "an investigator with the Houston Sheriff's Department has recently stated [in an email] that the murder case 'is open and on-going' and that he is not in a position 'to say whether Gregory Lewis will or will not be charged with any crime related to this incident.'" Dkt. 1 at 4. That email states:

> **From:** Crain, David (HCSO) <David.Crain@sheriff.hctx.net>
> **Sent:** Friday, October 11, 2024 1:26 PM
> **To:** Mike Engfer <mike@sryp.net>
> **Subject:** RE: Case # 230704841, Homicide Reva Garrison Lewis
>
> Mike,
>
> On October 4, 2024, I obtained a warrant for the arrest of Jaila Stanley (Gregory Lewis' girlfriend) for the murder of Reva Lewis. Gregory was present at the time of the murder and Reva's family insists Gregory was involved in, or responsible for, the murder.
>
> At this point, I have no evidence of a criminal act(s) on the part of Gregory Lewis with respect to this investigation. The case is open and on-going with Jaila Stanley being charged at this time.
>
> I am not in a position, at this time, to say whether Gregory Lewis will or will not be charged with any crime related to this incident. The insurance component of this case is all up to your agency.
>
> DC

**David Crain**
*Sr. Deputy/Investigator*

Dkt. 20-1 at 2–3. Claiming that it could not determine if Lewis is disqualified under Texas law from receiving his 50 percent of the basic and supplemental life insurance benefits, MetLife asked to deposit those benefits, plus any applicable interest, into the court's registry.

Lewis and Claim-Pro objected to the deposit of funds into the court's registry. Lewis and Claim-Pro also asserted almost identical counterclaims against MetLife. The counterclaims are for (1) benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B); (2) equitable relief for breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(3); and (3) breach of the Texas Prompt Payment of Claims Act ("TPPCA"). In essence, Lewis and Claim-Pro complain that MetLife improperly delayed payment of Plan benefits to the proper beneficiaries.

I held a status conference on July 1, 2025. At that conference, the parties agreed that I should allow MetLife to deposit into the registry of the court $80,500 (representing the basic and supplemental life insurance proceeds designated to go to Gregory Lewis), plus any applicable interest. I issued an order later that same day granting MetLife's claim for interpleader and requiring MetLife to deposit such funds into the court's registry. *See* Dkt. 55. The parties further represented at the July 1 hearing that they have agreed how to divide the $80,500 to be deposited into the court's registry. I expect the parties will soon file the paperwork seeking court approval for such distributions. Finally, Lewis and Claim-Pro insisted that the accidental death benefits should be paid immediately. MetLife disagrees.

MetLife has filed separate—but strikingly similar—motions to dismiss the counterclaims brought by Lewis and Claim-Pro. The only motion that is ripe for decision is MetLife's motion to dismiss Claim-Pro's counterclaims.[2]

---

[2] At the request of Lewis and MetLife, I have stayed consideration of MetLife's motion to dismiss Lewis's cross-claims to allow the parties to discuss a possible resolution of their dispute. *See* Dkt. 46.

## ANALYSIS

I will address the two pending motions separately.

### A.   CLAIM-PRO'S MOTION FOR LEAVE

Claim-Pro seeks to file a First Amended Counterclaim, which would include some additional factual allegations, remove the TPPCA claim, and add a claim under § 1103.104 of the Texas Insurance Code. Claim-Pro filed its Motion for Leave on June 30, 2025, long after the Docket Control Order's February 21, 2025 deadline to amend the pleadings expired. *See* Dkt. 28 at 1.

In seeking leave to amend, Claim-Pro cites a number of cases referencing Rule 15(a)(2), which states that leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2)'s extremely liberal standard has no application here. Rule 16(b)(4) "governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009).

"Once a scheduling order deadline to amend a pleading has expired, the party seeking to amend is effectively asking the court for leave to amend both the scheduling order and the pleading." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 694 (S.D. Tex. 2009). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quotation omitted). To determine whether good cause exists, the Fifth Circuit requires district courts to consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Marathon*, 591 F.3d at 470 (quotation omitted).

Although Claim-Pro fails to address the four Rule 16(b)(4) factors a district court must consider in determining whether to modify the Docket Control Order, I will address those factors in turn.

### 1. *The Explanation for the Failure to Timely Move for Leave to Amend*

"The most important factor bearing on the 'good cause' inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline." *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-cv-1455, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017). The burden rests with Claim-Pro, as the party seeking to modify the Docket Control Order, to show that the pleading deadline could not have reasonably been "met despite [its] diligence." *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015) (quotation omitted).

Notably absent from Claim-Pro's Motion for Leave is any explanation—much less a good one—for its failure to amend its pleadings to drop its TPPCA claim and add a Texas Insurance Code § 1103.104 claim by the February 21, 2025 deadline to amend pleadings. At the July 1 status conference, I asked Claim-Pro's counsel to explain why he waited more than four months after the pleading deadline to seek to amend Claim-Pro's counterclaims. Claim-Pro's counsel offered no substantive explanation. Claim-Pro could have added a § 1103.104 claim or dropped its TPPCA claim any time before the February 21, 2025 pleading deadline. It just failed to do so.

I recognize that Claim-Pro seeks to include a single factual allegation that post-dates the February 21, 2025 pleading deadline. *See* Dkt. 53 at 14 (referencing a statement made on May 13, 2025, by Sergeant Sofia Silva that "[a]t this moment, we are not seeking charges against Gregory Lewis."). But that is immaterial. A party seeking affirmative relief, like Claim-Pro, cannot amend its pleadings ad infinitum to add new factual allegations. The purpose of limiting the period for amending the

5

pleadings is to assure "that at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment. Importantly, the new factual allegation does not impact the viability of claims originally brought by Claim-Pro against MetLife. That will become evident when I address the motion to dismiss below. What Claim-Pro is really trying to do by seeking to amend its pleadings outside the time permitted by the Docket Control Order is to fundamentally change the nature of this case by adding a new cause of action and eliminating an existing cause of action.

I will not close my eyes to Claim-Pro's complete disregard for the deadlines imposed by the Docket Control Order. As the First Circuit has explained:

> In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation. Rule 16 provides the district courts with many of the devices necessary to manage its docket. For Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril. . . . [L]iberally granting motions to amend the pleadings—filed after a party has disregarded the scheduling order deadline—would effectively nullify the purpose of Rule 16(b)(1).

*O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004) (citation modified).[3] To summarize, the first factor weighs heavily against modifying the Docket Control Order to allow Claim-Pro to file an amended counterclaim.

### 2. *The Importance of the Amendment*

Although Claim-Pro advances no argument for why the proposed amended counterclaim is important, I can surmise that Claim-Pro recognizes that (1) its TPPCA claim is preempted by ERISA (hence, it wants to discard the claim); and (2) a claim for interest for MetLife's alleged failure to timely pay Plan benefits can likely be brought under Texas Insurance Code § 1103.104 (hence, it seeks to add this claim). It is certainly important to Claim-Pro that it be permitted to jettison doomed claims and add legally supportable claims. But that does not end my

---

[3] Curiously, Claim-Pro cites *O'Connell* as support for its Motion to Leave. The case offers no such support.

inquiry. Importance cuts both ways. It is important for our judicial system to operate efficiently by having parties respect court-imposed deadlines. Claim-Pro has been dilatory in seeking to amend its pleadings. Allowing Claim-Pro to amend its pleading here—months after the deadline to do so—would undercut the notion that judicial efficiency is important. This factor is, at best, neutral.

### 3. *The Potential Prejudice in Allowing the Amendment*

The Fifth Circuit has cautioned that amendments are prejudicial when they require a defendant to "prepare a defense for a claim different from the one that [is] before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (citation modified). Given that Claim-Pro seeks to add a new cause of action, there is some prejudice. But because discovery is at its infancy, the prejudice is not substantial. Ultimately, I am persuaded by the reasoning espoused in *O'Connell*:

> Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking the amendment. Prejudice to the opposing party remains relevant but is not the dominant criterion. Indifference by the moving party seals off this avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.

357 F.3d at 155 (citation modified). In short, the prejudice factor militates against allowing Claim-Pro to file an amended counterclaim.

### 4. *The Availability of a Continuance to Cure Such Prejudice*

The fourth and final factor requires me to consider whether the availability of a continuance is sufficient to cure any prejudice. Although a continuance would likely cure any prejudice caused by the late amendment, this factor, standing alone, does not justify the filing of an amended counterclaim.

***

Having considered the four good-cause factors, I am convinced that Claim-Pro has failed to demonstrate good cause under Rule 16(b)(4) to amend the Docket Control Order. The motion for leave should be denied.

7

B.   **METLIFE'S MOTION TO DISMISS**

Having recommend denial of Claim-Pro's motion for leave, I now turn to MetLife's motion to dismiss. Under the familiar Rule 12(b)(6) standard, I must liberally construe the counterclaim in Claim-Pro's favor and take all well-pleaded facts as true. *See Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). Even so, I need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quotation omitted). To defeat a Rule 12(b)(6) motion to dismiss, Claim-Pro must simply "nudge[] [its] claims across the line from conceivable to plausible" by pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when [Claim-Pro] pleads factual content that allows the court to draw the reasonable inference that [MetLife] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The live pleading is Claim-Pro's Objection to Interpleader, Answer, and Cross-Claim.[4] Dkt. 13. In that document, Claim-Pro brings three claims against MetLife. I will address each cause of action individually.

### 1.   *Benefits Under ERISA, 29 U.S.C. § 1132(a)(1)(B)*

"If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits" under § 1132(a)(1)(B). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *see also* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

Invoking § 1132(a)(1)(B), Claim-Pro seeks to recover Plan benefits allegedly owed to Lewis and, by assignment, Claim-Pro. Although Claim-Pro's live pleading

---

[4] Although the document references a cross-claim, that is a typographical error. Claim-Pro brings counterclaims, not cross-claims, against MetLife.

does not specify what the Plan benefits are, it is undisputed that "Decedents' total benefit coverages under the Plan are $41,000 in basic life insurance and $120,000 in supplemental life, and a possible $41,000 in accidental death if payable." Dkt. 36 at 2. Because the basic life insurance and supplemental life insurance benefits will be deposited into the registry of the court, any § 1132(a)(1)(B) claim with respect to those Plan benefits evaporates. There remains, however, a colorable claim for the accidental death benefits, at least at this early pleading stage. Accepting all well-pleaded facts as true and viewing them in the light most favorable to Claim-Pro, Claim-Pro has stated a claim under § 1132(a)(1)(B) for accidental death benefits. Whether that claim has any merit will be determined as this case moves forward.

### 2. *Equitable Relief for Breach of Fiduciary Duty Under ERISA, 29 U.S.C. § 1132(a)(3)*

Claim-Pro also seeks "equitable relief" under Section 502(a)(3) of ERISA. This section permits a beneficiary to bring a breach of fiduciary duty claim "to obtain other appropriate equitable relief (i) to redress such [ERISA] violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). The Supreme Court has described this section of ERISA as a "catchall" that acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

In connection with this claim, Claim-Pro alleges that MetLife breached its fiduciary duties by unjustifiably delaying payout of Plan benefits. Claim-Pro "prays for equitable relief, as permitted by 29 U.S.C. § 1132(a)(3), by way [of] paying interest, damages of not reimbursing Claim-Pro for the funeral assignment, lost profits, together with reasonable attorney fees and costs." Dkt. 13 at 10.

MetLife insists that Claim-Pro's § 1132(a)(3) claim for equitable relief should be dismissed because Claim-Pro seeks only money damages—a classic form of legal

9

relief that is unavailable under ERISA's equitable safety net. To address MetLife's argument, I must address each type of relief Claim-Pro seeks under § 1132(a)(3).

First, Claim-Pro asks for "damages of not reimbursing Claim-Pro for the funeral assignment" and "lost profits." *Id.* Compensatory damages and lost profits are quintessential legal remedies, not equitable remedies. As a result, such damages are not recoverable in private actions for breach of fiduciary duty brought under § 1132(a)(3). *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 944 (5th Cir. 1999) (recovery under § 1132(a)(3) does not extend to compensatory damages); *Baumgarten v. Citigroup, Inc.*, No. H-05-1854, 2005 WL 1711864, at *7 (S.D. Tex. July 20, 2005) (lost profits are not recoverable under § 1132(a)(3)).

Second, Claim-Pro seeks attorneys' fees and costs as equitable relief under § 1132(a)(3). This claim also fails because it is duplicative of § 1132(g)(1)'s provision for attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(1) ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). Because attorneys' fees and costs are available under § 1132(g)(1), Claim-Pro may not resort to ERISA's equitable catchall provision to seek the same relief. *See Varity Corp.*, 516 U.S. at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." (quotation omitted)).

Third and finally, Claim-Pro seeks an award of interest for delayed benefits. Because money damages are not typically available in equity, a request for interest appears, at first blush, to be a legal, as opposed to an equitable, remedy. But not so fast. Under § 1132(a)(3), "equitable relief" refers to "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). A number of district and appellate courts have considered whether a claim for interest on wrongfully withheld funds is an equitable claim cognizable under § 1132(a)(3). The majority of those courts have concluded that a district court "may award prejudgment interest as 'other appropriate equitable relief' under

10

§ 1132(a)(3)(B) when benefits are wrongfully delayed." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1006 (8th Cir. 2004); *see also Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 209–10 (3d Cir. 2004); *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 228–29 (2d Cir. 2002); *Cheal v. Life Ins. Co. of N. Am.*, 330 F. Supp. 2d 1347, 1353 (N.D. Ga. 2004). For that reason, Claim-Pro's claim for prejudgment interest under § 1132(a)(3)(B) should not be dismissed.

### 3. Breach of the TPPCA

Claim-Pro's third claim is brought under the TPPCA for MetLife's alleged failure to timely pay Plan benefits. "The TPPCA, codified in Texas Insurance Code chapter 542, imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019). MetLife argues that Claim-Pro's TPPCA claim is preempted by ERISA.

"ERISA includes expansive preemption provisions, . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208 (quotation omitted). ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state cause of action relates to an employee benefit plan whenever it has "a connection with or reference to such a plan." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995) (quotation omitted). Here, Claim-Pro's TPPCA claim for failing to timely distribute Plan benefits could not be made without the existence of the Plan. Thus, it is preempted by ERISA. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 201 (5th Cir. 2015) (holding that that TPPCA claims are preempted by ERISA); *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 277–78 (5th Cir. 2004) (same); *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, No. H-08-2336, 2011 WL 12896736, at *20 (S.D. Tex. Aug. 22, 2011) (same).

Faced with the inevitable, Claim-Pro does not dispute that ERISA preempts the TPPCA. Instead, Claim-Pro asserts for the first time in response to the motion to dismiss that it seeks to recover interest under Texas Insurance Code § 1103.104, a statute it claims is saved from ERISA preemption. Section 1103.104, which is not referenced anywhere in the operative counterclaim, requires an insurance company pay "[i]nterest on the proceeds of a life insurance policy . . . from the date the company that issues the policy receives due proof of loss until the date the company accepts the claim and offers to pay." Tex. Ins. Code § 1103.104(a). Whether a § 1103.104(a) claim is subject to ERISA preemption is irrelevant. As the Fifth Circuit has repeatedly held, a claim raised for the first time in response to a dispositive motion "is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quotation omitted) (collecting cases). Accordingly, I recommend that the TPPCA claim be dismissed.

## CONCLUSION

For the reasons explained above, I recommend that Claim-Pro's motion for leave (Dkt. 53) be denied and MetLife's motion to dismiss (Dkt. 20) be granted in part and denied in part. Specifically, Claim-Pro's § 1132(a)(1)(B) claim for accidental death benefits and Claim-Pro's claim for prejudgment interest under § 1132(a)(3)(B) should survive the motion to dismiss. All other claims raised by Claim-Pro against MetLife should be dismissed.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 7th day of July 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE